IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRANSAM LOGISTICS, INC, on its own behalf and as assignee Body Armor Sports Drink and Freight Management Group, LLC | Court No.: |
| Plaintiff, | |
| v. | Judge: |
| TOP LINE TRUCKING, INC. | |
| Defendant. | |

**COMPLAINT**

NOW COMES the Plaintiff, TRANSAM LOGISTICS, LLC. ("Plaintiff') by and through its attorneys, HR LAW COUNSEL, LLC, and as and for its Complaint against Defendant, Top Line Trucking, Inc. ("TLT") states as follows:

**THE PARTIES**

1. At all times relevant, Plaintiff was a Limited Liability Company authorized by the Federal Motor Carrier Safety Administration ("FMCSA") to arrange for the transportation of freight by motor carrier in interstate and foreign commerce with its principal place of business in Aurora, Illinois.

2. At all times relevant, Top Line Trucking was an Illinois Corporation and federally authorized motor carrier providing transportation services in interstate commerce throughout the United States with its principal place of business in Burr Ridge, IL. As of the date of this filing, TLT remains a federally authorized motor carrier.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 49 U.S.C. § 14706 as the claim for relief is premised in the liability of motor carriers transporting freight in interstate commerce and which conduct business in this District.

4. Venue is also appropriate in this District because Plaintiff and TLT reside in this District, and the transaction giving rise to the cause of action occurred in this District.

## THE INCIDENT AND CARGO CLAIM

5. On or about July 1, 2022, Plaintiff, in its capacity as a freight broker, on behalf of its customer, BA Sports Nutrition, LLC, tendered to TLT a shipment of sports drinks for transportation in interstate commerce from Troutman, NC to a Coca-Cola Southwest Distribution Center (Buckner Combo Center) in Dallas, TX. A true and correct copy of the Carrier Rate Confirmation for this shipment, referenced as Load 0033808, is attached hereto as Exhibit 1.

6. At the time the shipment was tendered to and received by TLT it was in good order and condition as acknowledged on the Bill of Lading issued for the shipment.

7. Pursuant to the Bill of Lading for the subject shipment, the Carrier acknowledged upon pickup of the sports drinks that they were properly loaded and in good condition.

8. Subsequent to TLT's receipt of the shipment, TLT transported the shipment by tractor-trailer to the Dallas, TX area.

9. Plaintiff verified by phone with TLT that Load 0033808 was delivered to the scheduled receiver (CCSWB Buckner Combo Center) on July 5, 2022 at 10:40 a.m. without incident.

10. However, several weeks later, Plaintiff discovered that the information provided by TLT was false and that Load 0033808 never arrived at its destination facility.

11. On September 19, 2022, Plaintiff was notified by a third-party, Restore Logistics & Pallets Corp. (RLPC) that on or about July 7, 2022, Load 0033808 was actually delivered to its warehouse

and put into storage.

12. On July 7, 2022, Victor Vidak, TLT's Operations Executive, independently arranged for the repalletization and storage of the remaining contents of Load 0033808, incurring repalletization and storage fees of approximately $5,520.

13. Apparently, during transit, the tractor trailer was robbed and according to Dallas Police Report CN 120597-2022, sometime between July 2 and July 4, 2022, unknown person(s) entered the tractor-trailer LP#1332STT and unlawfully removed product from the trailer which was estimated by the driver to be two pallets of product.

14. The value of the shipment of sports drinks, as shown on the damage claim issued by Body Armor Sports Drink, LLC and the Freight Management Group, LLC is $26,688.12.

15. TLT refused to cooperate with or pay RLPC for the repalletization and storage costs of $5,520.

16. Plaintiff paid RLPC the repalletization and storage costs of $5,520 in exchange for the assignment of all of its rights, title, and interest in the repalletization and storage fees and claim for prosecution and collection.

17. Because the freight was food product, it could not be salvaged.

18. Plaintiff has paid BA Sports Nutrition, LLC and Freight Management Group, LLC, the customer/owner of the shipment $26,688.12 in exchange for the assignment of all of its rights, title, and interest in the shipment and claim for prosecution and collection of the cargo loss.

## **DOUBLE BROKERING**

19. Pursuant to Paragraph 2(D) of the Broker-Carrier Agreement, TLT agreed to not re-broker, sub-broker, sub-contract, assign or interline any shipment under the Agreement (i.e., "double brokering." A true and correct copy of the Broker-Carrier Agreement for Load 0033808, is

attached hereto as Exhibit 2.

20. On or about July 5, 2022, TLT presented a Bill of Lading to Plaintiff that indicated that it was the Carrier responsible for the shipment. A true and correct copy of the Top Line Trucking Bill of Lading is attached hereto as Exhibit 3.

21. However, on or about September 22, 2022, RLPC provided a second Bill of Lading to Plaintiff that indicated that the load had been double brokered and that the truck delivering Load 0033808 was actually owned and operated by Adams Family. A true and correct copy of the Adams Family Bill of Lading is attached hereto as Exhibit 4.

22. As of the date of this filing, Adams Family Trucking is not a federally authorized motor carrier.

## COUNT I - CARMACK AMENDMENT LIABILITY

23. Plaintiff Restates and re-alleges Paragraphs 1-22 as Paragraph 23 as if fully set forth herein.

24. The subject shipment involves the transportation of goods by motor carrier in interstate commerce.

25. On or about July 1, 2022, TLT received and accepted the subject shipment in good order and condition and suitable in every respect for the subject transportation.

26. For reasons known only to TLT but that presumably include the aforementioned robbery, TLT failed to deliver the shipment in good order and condition to the Coca-Cola Southwest Distribution Center (Buckner Combo Center) in Dallas, TX.

27. Pursuant to 49 U.S.C. § 14706 (the "Carmack Amendment"), TLT, the motor carrier, is liable for damages for the loss to the shipment.

28. Plaintiff, as the assignee of the claim, has demanded, and continues to demand payment for the cargo loss and repalletization and storage costs from TLT.

29. To date, TLT has failed to remit payment to Plaintiff.

WHEREFORE, Plaintiff, TRANSAM LOGISTICS, LLC respectfully requests this Honorable Court enter Judgment in its favor in the amount of $32,208.12 against Top Line Trucking, Inc., plus costs, attorneys' fees, and interest, and for any other relief deemed just under the circumstances.

### COUNT II - BREACH OF INDEMNIFICATION AGREEMENT
### IN THE ALTERNATIVE

30. Plaintiff restates and re-alleges Paragraphs 1-22 as Paragraph 30 as if fully set forth herein.

31. At all times relevant, there was a Broker-Carrier Agreement entered into between Plaintiff and TLT. *See* Ex. 2.

32. At all times relevant, Plaintiff performed all conditions precedent to the Agreement.

33. Paragraph 2(F) of the Broker-Carrier Agreement requires TLT to be responsible for and to defend and indemnify Plaintiff against all claims, including losses or damages to cargo shipped under the Broker-Carrier Agreement. *See* Ex. 2 at 2(F).

34. Plaintiff has demanded, and continues to demand that, TLT indemnify Plaintiff in the amount of $32,208.12.

35. TLT is in breach of its agreement with Plaintiff, by failing to indemnify Plaintiff.

WHEREFORE, Plaintiff, TRANSAM LOGISTICS, LLC respectfully requests this Honorable Court enter Judgment in its favor in the amount of $32,208.12 against Defendant Top Line Trucking, Inc., plus costs, attorneys' fees, and interest, and for any other relief deemed just under the circumstances.

### COUNT III - BREACH OF BROKER-CARRIER AGREEMENT
### IN THE ALTERNATIVE

36. Plaintiff restates and re-alleges Paragraphs 1-22 as Paragraph 36 as if fully set forth herein.

37. At all times relevant, there was a Broker-Carrier Agreement entered into between Plaintiff and TLT. *See* Ex. 2.

38. At all times relevant, Plaintiff performed all conditions precedent to the Agreement.

39. Paragraph 2(D) of the Broker-Carrier Agreement, requires TLT to not re-broker, sub-broker, sub-contract, assign or interline any shipment under the Agreement (i.e., "double brokering." *See* Ex. 2 at 2(D).

40. Plaintiff double-brokered Load 0033808 to Adams Family Trucking, an unauthorized motor carrier.

41. Plaintiff has demanded, and continues to demand that, TLT pay Plaintiff in the amount of $32,208.12 for breach of the Broker-Carrier Agreement.

42. TLT has refused to pay Plaintiff.

43. TLT is in breach of its Agreement with Plaintiff, by double-brokering the load and failing to pay Plaintiff despite repeated demands to do so.

WHEREFORE, Plaintiff, TRANSAM LOGISTICS, LLC respectfully requests this Honorable Court enter Judgment in its favor in the amount of $32,208.12 against Defendant Top Line Trucking, Inc., plus costs, attorneys' fees, and interest, and for any other relief deemed just under the circumstances.

Dated this 15th of February, 2023.

Respectfully Submitted,

Plaintiff, TRANSAM LOGISTICS
*/s/ Ethan G. Zelizer*
Ethan G. Zelizer
Illinois Bar Number 6280096

6

> HR LAW COUNSEL
> 29 S. Webster St., Suite 350-C
> Naperville, Illinois 60540
> 630.551.8374
> ethan@hrlawcounsel.com
>
> *Attorney for Plaintiff*